IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| **TINA K. COOK,** ) | |
| ) | |
|    **Plaintiff,** ) | |
| ) | |
| v. ) | **Case No.:  3:12-CV-3525-VEH** |
| ) | |
| **CAROLYN W. COLVIN,** ) | |
| **ACTING COMMISSIONER,** ) | |
| **SOCIAL SECURITY** ) | |
| **ADMINISTRATION,** ) | |
| ) | |
|    **Defendant.** ) | |

## **MEMORANDUM OPINION**[1]

### INTRODUCTION

Plaintiff Tina K. Cook brings this action under 42 U.S.C. § 405(g), Section 205(g) of the Social Security Act. She seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied her application for Disability Insurance Benefits ("DIB"). Ms. Cook timely pursued

---

[1] Carolyn W. Colvin was named the Acting Commissioner on February 14, 2013. *See* http://www.socialsecurity.gov/pressoffice/factsheets/colvin.htm ("On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security.") (last accessed on September 16, 2013). Under 42 U.S.C. § 405(g), "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office." Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the court has substituted Carolyn W. Colvin for Michael Astrue in the case caption above and **HEREBY DIRECTS** the clerk to do the same party substitution on CM/ECF.

and exhausted her administrative remedies available before the Commissioner. The case is thus ripe for review under 42 U.S.C. § 405(g).[2] For the following reasons, the court will **AFFIRM** the Commissioner's decision.

## STATEMENT OF THE CASE

Ms. Cook was 44 years old at the time of her hearing before the Administrative Law Judge ("ALJ"). Tr. 117. She has a high school diploma and attended a few years of college. Tr. 130. Her past work experience includes employment as a machine operator, restaurant owner, and store manager. Tr. 149-156. She claims she became disabled on May 5, 2008, due to fibromyalgia and muscle connective tissue disorder in her legs. Tr. 125. Her last period of work ended on that same date. *Id.*

On February 23, 2009, Ms. Cook protectively filed a Title II application for a period of disability and DIB. Tr. 20. On April 14, 2009, the Commissioner initially denied these claims. *Id.* Ms. Cook timely filed a written request for a hearing on May 1, 2009. *Id.* The ALJ conducted a hearing on the matter on November 1, 2010. *Id.* On December 15, 2010, she issued her opinion concluding Ms. Cook was not disabled and denying her benefits. Tr. 20-30. Ms. Cook timely petitioned the Appeals Council to review the decision on February 1, 2011. Tr. 12. On August 8, 2012, the Appeals

---

[2]42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

Council issued a denial of review on her claim. Tr. 1.

Ms. Cook filed a Complaint with this court on October 5, 2012, seeking review of the Commissioner's determination. Doc. 1. The Commissioner answered on January 9, 2013. Doc. 7. On March 25, 2013, the Commissioner filed a supporting brief. Doc. 9.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions de novo because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the

court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant

---

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

    (1)    whether the claimant is currently employed;

    (2)    whether the claimant has a severe impairment;

    (3)    whether the claimant's impairment meets or equals an impairment listed by the Commissioner;

    (4)    whether the claimant can perform his or her past work; and

    (5)    whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). The sequential analysis goes as follows:

> Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Foote*, 67 F.3d at 1559.

## ALJ FINDINGS

After consideration of the entire record, the ALJ made the following findings:

1. Ms. Cook last met the insured status requirements of the Social Security Act on June 30, 2010.

2. She had not engaged in substantial gainful activity from her alleged onset date of May 5, 2008, through her date last insured.

3. She had the following severe impairments: fibromyalgia, a history of bilateral ulnar nerve transposition, and a history of cervical radiculopathy status post anterior cervical discectomy and fusion with allograft and plating.

4. She did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 – specifically, Listing 1.00.

5. She had the residual functioning capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b), but with some exceptions. Specifically, Ms. Cook could have walked/stood – each – for two hours during an eight-hour workday, and she should have been afforded the opportunity to alternate between sitting and standing one to two minutes every hour, if needed. Additionally, she could have only occasionally performed overhead work, and she could have performed frequent movement of her head – specifically, she should not have performed a lot of looking up and down. Finally, she could have frequently performed pushing and pulling with her upper extremities.

6. Through the date last insured, she was unable to perform any past relevant work.

7. She was born on [redacted by court], 1966, and was 44 years old, which is defined as a younger individual age 18-49.

8. She had at least a high school education and was able to communicate in English.

9. Transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that she was "not disabled," whether or not she had

  transferable job skills.

 10. Through the date last insured, considering her age, education, work experience, and residual functioning capacity, there were jobs that existed in significant numbers in the national economy that she could have performed.

 11. Ms. Cook had not been under a disability, as defined in the Social Security Act, from May 5, 2008, the alleged onset date, through June 30, 2010, the date last insured.

Tr. 22-30.

## DISCUSSION

 The court may only reverse a finding of the Commissioner if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[4] However, the court "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

 Ms. Cook did not submit a brief outlining her arguments for reversal. Nevertheless, the court has exercised its duty to independently scrutinize the record. It finds that substantial evidence supports the Commissioner's factual findings and the

---

 [4]*Strickland* is binding precedent in this Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

Commissioner did not commit any legal errors in arriving at her conclusion that Ms. Cook was not disabled.

## I.     Substantial Evidence Supports the ALJ's RFC Determination.

It is obvious, from her hearing testimony and from other parts of the record, that Ms. Cook disputes that she can return to work of any kind because of her fibromyalgia and associated pain in her extremities. *See, e.g*, Tr. 48-52. The court will thus analyze here the ALJ's conclusion that she still had the capacity to perform "light" work[5] – with certain restrictions – despite her impairments. As explained below, the ALJ applied proper legal standards in deciding to discredit Ms. Cook's subjective complaints of pain. As the ALJ capably revealed, the record evidence substantially supported her RFC determination.

Ms. Cook cites her considerable pain in supporting her disability claim. In her hearing testimony, she stated that the pain was "primarily" in her hips and legs and "occasionally" in her arms. Tr. 48. The pain allegedly manifested itself as "a burning

---

[5]The Regulations define "light work" in the following manner:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls . . . If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

pain all over," and it allegedly afflicted her every day. *Id.* She claimed she had relatively good days and bad days, however, and the bad days occurred roughly three days a week. *Id.* On those bad days, she stated that she lied down roughly six hours a day with a heating pad wrapped up in a blanket. Tr. 48-49. She scaled her pain during these times as "at least a seven or eight. It's like your body is on fire." Tr. 49. However, the pain was only at a four or five on the relatively "good" days. *Id.* The pain allegedly prevented her from many of her daily activities – like going outdoors, doing crafts, and sewing. Tr. 49-50. Also, she was unable to do household chores regularly. Tr. 50. The pain further caused her to inadvertently drop things she was holding. *Id.* According to Ms. Cook, she wouldn't be able to perform even a stationary job because she couldn't stand and look down for a long period of time. *Id.*

A claimant who seeks "to establish a disability based on testimony of pain and other symptoms" must show the following:

- Evidence of an underlying medical condition; and

- Either:

    - objective medical evidence confirming the severity of the alleged pain; or

    - that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citation omitted). An ALJ

must articulate "explicit and adequate reasons" in order to discredit subjective testimony. *Id.* (citation omitted). Failure to do so "requires, as a matter of law, that the testimony be accepted as true." *Id.* (citation omitted). However, the ALJ does not need to "specifically refer to every piece of evidence in his decision," so long as the decision shows that the ALJ considered the claimant's medical condition as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (citation omitted).

The ALJ here acknowledged that Ms. Cook had "some credible pain symptoms" from her severe impairments. Tr. 24. However, the ALJ was also explicit and persuasive in explaining why she did not find that the objective medical evidence substantiated Ms. Cook's allegations of "totally disabling" symptoms and limitations. *Id.* The ALJ based her conclusion on the following three foundations:

- Ms. Cook's treatment notes revealed that her neck pain had "essentially resolved since undergoing a disectomy and fusion with allograft and plating;"

- the treatment notes also revealed Ms. Cook's fibromyalgia was well-controlled with medication; and

- Ms. Cook's self-description of her daily living activities were not as limited as one would expect given her complaints of totally disabling symptoms and limitations.

*Id.* The ALJ then elaborated by reviewing the medical record systematically. She highlighted a "Function Report" Ms. Cook filled out in March 2009. Tr. 25. In that report, Ms. Cook acknowledged performing personal care, doing routine household

chores, driving, and shopping. *Id.* Ms. Cook further admitted to requiring reminders to take her pain medication, and she reported no problems paying attention or following instructions. *Id.*

The ALJ noted that Ms. Cook had suffered from bilateral ulnar nerve entrapment and had received treatment for it as far back as 2005. *Id.* In fact, she had undergone two procedures – in October 2005 and December 2007 – to address symptoms of this ailment in her right ulnar nerve and left elbow. *Id.* These procedures were reportedly successful, and a February 2008 EMG/NCS of Ms. Cook's upper-left extremity revealed no abnormalities. *Id.*

The ALJ also underscored several medical appointments Ms. Cook made after her alleged disability onset date. *Id.* During these visits, Ms. Cook variably complained to her physicians about fatigue, lightheadedness, foot swelling, aching/tingling in her legs, and respiratory problems. *Id.* The ALJ emphasized that, in each instance, physical examinations revealed Ms. Cook's condition to be unremarkable or otherwise without serious abnormalities. Tr. 25-26. On several occasions – such as in January 2009, October 2009, and December 2009 – Ms. Cook reported that she was doing well or that her medication was working. Tr. 26-27. After her physician performed a surgical procedure on her to address her cervical radiculopathy, she further reported in follow-up appointments in March, May, and

June 2010 that she was doing "exceptionally well," that her physical activity was unencumbered, and that the procedure had "almost erased the neuropathic pain she had been having in her arms." Tr. 27. She did complain to her primary care physician in the spring and fall of 2010 regarding fibromyalgia-related pain in her hip and leg. Tr. 27-28. However, she reported to her rheumatologist that September that her medication was working well with her pain symptoms. Tr. 28.

The ALJ finally emphasized certain admissions Ms. Cook made in her hearing testimony. Ms. Cook acknowledged that she had no major problems with her neck since her surgery outside of "some lack of flexion." *Id.* She also admitted that "she was not under as much stress as she reported to her Rheumatologist in September 2010." *Id.* She further admitted having no issues with personal care. *Id.*

Altogether, the ALJ has articulated "explicit and adequate reasons" for discrediting Ms. Cook's claims of totally-disabling pain. The court further finds that substantial evidence supports the ALJ's conclusion that the objective medical evidence did not sustain the severity of Ms. Cook's alleged pain.

## II. The ALJ Fully and Fairly Developed the Record.

### A. *The ALJ's Duty to Develop the Record*

Social Security proceedings "are inquisitorial rather than adversarial." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000) (plurality opinion). The ALJ thus has the duty "to

investigate the facts and develop the arguments both for and against granting benefits." *Id.* at 111 (citing *Richardson v. Perales*, 402 U.S. 389, 400-01 (1971)). The ALJ's "basic obligation to develop a full and fair record," *Coward v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981), exists whether or not the applicant is represented. *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995) (citation omitted). When the claimant is unrepresented, however, the ALJ's duty is heightened. *See Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982). As the Commissioner notes, Ms. Cook was legally represented in his hearing below. Doc. 9 at 14 (citing Tr. 48). Thus, the ALJ had no special duty to "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts." *Id.* (quotation omitted).

The ALJ must specifically "develop the claimant's complete medical history for at least the 12 months preceding the month in which the application was filed, and to make every reasonable effort to help a claimant get medical reports from the claimant's own medical sources when permission is given." *Robinson v. Astrue*, 235 F. App'x 725, 727 (11th Cir. 2007) (unpublished) (citing 20 C.F.R. § 416.912(d)). The ALJ should re-contact medical sources when the evidence received from that source is inadequate to determine whether the claimant is disabled. *See* 20 C.F.R. §§ 404.1512(e), 416.912(e). "Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support

13

of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) (citations omitted).

### B.  *The ALJ did not need to solicit an MSS or a consultative examination.*

In arriving at her conclusion that Ms. Cook had the RFC to perform light work, the ALJ did not examine a medical source statement ("MSS") from either a treating or examining physician. Nor did the ALJ independently solicit a consultative examination from a qualified physician.

Neither omission was reversible error. An ALJ should order an MSS or a consultative examination "when such an evaluation is necessary for him to make an informed decision." *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (citation omitted)). That is, such an assessment is essential when the record is otherwise underdeveloped. The court has already reviewed the meticulous analysis performed by the ALJ in this case. The ALJ did not encounter a claimant with an unexamined (or inadequately examined) collection of impairments. Rather, the ALJ confronted a "record contain[ing] sufficient evidence . . . to make an informed decision." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007) (citation omitted). Ms. Cook – through her counsel – notably did not petition the ALJ for an MSS or a consultative examination. The ALJ therefore did not err in failing to obtain one unrequested by this represented claimant.

### C. *The ALJ's vocational questions were adequately comprehensive.*

Neither did the ALJ reversibly err in the questions she directed to the vocational expert ("VE") who testified at Ms. Cook's hearing. In order for the testimony of a VE "to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) (per curiam) (citation omitted). In this case, the ALJ posed four hypothetical scenarios to the VE. She described the first scenario in the following way:

> Let's assume we have a hypothetical individual with the claimant's education, training, work experience who's limited to a light range of work as that term is defined under the regulations. Who must be afforded an option to sit and stand during the workday one, or change positions one or two minutes every hour or so. Is further limited to occupations where there would only be occasional overhead work or frequent movements of the head. And further limited to occupations which would at most require frequent push, pull of the bilateral upper extremity. Would Mr. Alpha be able to perform any of Ms. Cook's past relevant work?

Tr. 53. In response to the VE's question concerning what she meant by "head movements," the ALJ elaborated, "Like having, having to do frequent up, down sort of as the claimant testified. She's not supposed to do looking up and looking down." *Id.* After the VE responded to that clarification, the ALJ then described the second hypothetical:

> Let's assume we have a second hypothetical individual, Mr. Beta, who also is, has the claimant's education, training, work experience limited to a light range

15

of work as that term is defined in the regulations. But would be further limited to occasional, well, actually would have the same limitations as Mr. Alpha, but would also be further limited to occasional walking and standing two hours out of an eight hour day. Would be walking two hours, standing two hours, so it'd be a total of four hours out of the eight hour day. Would Mr. Beta be able to perform any of Ms. Cook's past relevant work?

*Id.* After the VE responded to that hypothetical, the ALJ described the following scenario:

> Let's assume we have a third hypothetical individual, Mr. Charlie, who has the claimant's education, training, work experience, and the same limitations as Mr. Beta. But who would further be limited to occasional or, I'm sorry, must avoid concentrated exposure to hot/cold temperature extremes or excessive vibration. I'm going to assume that Mr. Charlie would not be able to perform any of the past relevant work since Mr. Beta couldn't but is there other work in the, or other jobs in the national or regional economy that a person with those limitations could perform?

Tr. 54. Finally, the ALJ concluded with this scenario:

> Let's assume we have a fourth hypothetical individual with the claimant's education, training, and work experience, Mr. Delta, who has the same limitations as Mr. Charlie. But who would be expected to miss two days of work per month due to physical problems. Again, I'm going to assume that past relevant work is not available but is there other work in the regional or national economy that a person with those limitations could perform?

Tr. 55.

These hypothetical questions more than adequately spanned Ms. Cook's impairments. The ALJ progressively adjusted her various scenarios to accommodate the full range of Ms. Cook's possible restrictions. In fact, when asked by the VE to clarify her comment regarding head movement restrictions, the ALJ specified

precisely how Ms. Cook's circumscribed neck flexion limited her functional capabilities. The ALJ also permitted Ms. Cook's attorney to ask a further hypothetical to the VE that reflected certain alleged limitations of Ms. Cook's that he evidently wanted to highlight. Altogether, the ALJ satisfied her duty to fully and fairly develop the record in this respect.

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the parties' submissions, the court finds that the Commissioner's decision is supported by substantial evidence and that she applied proper legal standards in arriving at it. Accordingly, the court will affirm the decision by separate order.

**DONE** and **ORDERED** this the 28th day of March, 2014.

**VIRGINIA EMERSON HOPKINS**
United States District Judge